## NELLIS vs. LATHROP.

A *tenant* cannot deny his *landlord's* right to demise, nor can he set up an outstanding title against him, but he may become a *purchaser* of the reversion at a sheriff's sale on an execution against the landlord, or he may acquire the interest of his landlord in the reversion as a *redeeming creditor*, where the reversion has been sold on an execution against the landlord.

Where the interest of the landlord, thus acquired by the *tenant*, extends to the *whole* of the demised premises, he may set it up *in bar* of a recovery for rent; but where it includes only a *part* of the demised premises, it operates only *in diminution of damages*. The tenant in the latter case may demand an *apportionment* of the rent.

THIS was an action of *covenant* tried at the Oneida circuit in October, 1838, before the Hon. PHILO GRIDLEY, one of the circuit judges.

The action was brought for rent accruing on a lease of certain premises executed by Daniel Ferguson and Nancy his wife, to the defendant, bearing date 21st May, 1832, for a term ending on the 1st April, 1833, with the privilege, however, to the *tenant* of electing at the expiration of that time, to continue the term four years longer, at a rent of $400 per annum, payable quarterly. The defendant entered and elected to continue the term. On the 20th *April*, 1833, the lessors *assigned* the lease to the *plaintiff*. The defendant paid the quarter's rent due 1st October, 1833, and left the premises. The rent demanded was for *two quarters*, accruing between 1st October, 1833, and 1st April, 1834. On the above facts, the plaintiff rested.

The defendant offered to show that on the 4th *October*, 1833, he became entitled to a sheriff's deed of a portion of the demised premises, as a *redeeming creditor*, according to the facts as stated in the last preceding case ; that he was delayed in obtaining his deed until 28th February, 1835, by means of an *injunction* obtained by the *lessors*, on the filing of a bill in chancery, on which last mentioned day, however, the deed was executed ; and he insisted that under the doctrine of *relation, it must be deemed to have been executed on the 4th of October*, and that consequently the

plaintiff, as the assignee of the lessors, was divested of his title to the demised premises after that day. The judge held the evidence to be impertinent, that it did not constitute a legal defence to the action, refused to receive it, and charged the jury that the defendant not having obtained his deed from the sheriff during the accruing of the rent claimed by the plaintiff, could in no sense be said to be evicted from the demised premises, or to be in a situation tantamount or equivalent to an eviction ; that the doctrine of relation did not apply to a case like the present, and that the defendant's title to the premises contained in the sheriff.'s deed did not commence until the time of the execution of the deed ; and the jury, under the direction of the judge, found a verdict for the plaintiff for the rent claimed, together with the interest thereof.   The defendant asks for a new trial.

*W. Tracy & W. C. Noyes*, for the defendant.

*C. P. Kirkland*, for the plaintiff.

*By the Court*, Cowen, J.   It is clear, that as between the now defendant and Ferguson, the lessor, the deed of February 28th, 1835, related back to the 4th of October, 1833 ; and from that time divested all title of Ferguson to that part of the demised premises included in it.   The plaintiff claiming under him must, therefore, abide the legal consequences arising from Ferguson's failure of title.   The plaintiff stands in Ferguson's place, being his *assignee ;* and both must be taken to have been *pro tanto* totally destitute of title, and of all right to demise and to hold as landlord, from the 4th of October, 1833.   Here has been no eviction of the defendant, nor any act equivalent to an eviction by the plaintiff, from the whole or any part of the demised premises. The judge was right, therefore, in saying that no defence arose upon that ground.   But the plaintiff lost his title subsequent to the giving of the lease, and the lessee acquired it as to part of the demised premises.   Had he a right to acquire the title of his landlord, and set him at defiance ?   So long as he is not expelled, he has, in general, no right to

Nellis v. Lathrop.

question his landlord's title. He cannot deny that he had a right to demise at the time of the lease. He cannot defend, on the ground that he has acquired an outstanding title adverse to that of the landlord. But I am not aware that the estoppel goes farther. If the landlord part with his title pending the lease, the duty of the tenant, including that of paying rent, is due to the assignee; and should the tenant buy in the assignee's right, the lease would be extinguished. So, should the landlord sell and release to the lessee. In these cases, no action would lie for the rent. Therefore, had there been a sheriff's sale of the *whole* reversion in the demised premises, and the defendant had redeemed or purchased under the judgment, no action could have been sustained; for a purchase or acquisition of title under a judgment against the lessor is the same thing as if he had granted by deed. It is, to be sure, acquiring title indirectly and by operation of law, from the lessor; but it comes through his act and consent, or his neglect, and is therefore the same in legal effect as if he had granted or devised the reversion.

But the title to only a *part* of the demised premises passed to the defendant. I do not say this on the ground that Ferguson's wife who joined him as lessor must be taken to have been seized of some portion, for her seizin must be deemed that of her husband, at least during the life of both; and during that time, her right was subject to be sold under execution for his debts. But the deed to the defendant covered only part of the demised premises. His case was not, therefore, in any view, one of total defence; and the judge was right in saying that the evidence could not be received as a bar to the action.

But I think the judge erred in shutting out the evidence as totally *impertinent*. It should have been received in mitigation of damages. The plaintiff, or rather his assignor, who, as I remarked, are in this case legally identical, having after the date of the demise, parted in effect with the reversion of a part of the demised premises, rent should have been recovered for the residue only. The rent is incident to the reversion, and follows the grant of it without

express words. So, if the reversion in part of the land be granted, a proportional part of the rent follows. *Gilb. on Rents, Dubl. ed. of* 1792. In short, the evidence offered raised a case of *apportionment.* It is the same as if the lessor, or his assignee or other persons holding the reversion, should release his title in a part of the land to the lessee. This would extinguish the rent for so much; but, being by the act of the parties, the rent would be apportionable. It comes, in principle, to the case stated in *Woodf. Land. and Ten.* 252, *Lond. ed. of* 1804, citing *Vin. Abr. Apportionment, B.* 5, 12. Woodfall says: "If lessee for years of land, rendering rent, accept a new lease from the lessor, of part of the land, which is a surrender of this part, the rent shall be apportioned; for *this comes by the act of the parties.*" The duty in question is a *rent service,* of which *Gilbert* remarks, that if a man who has such a rent, purchase part of the land out of which it issues, yet the rent shall be apportioned; though otherwise of a *rent charge,* which is wholly extinguished. *Gilb. on Rents,* 151, 2, *Dubl. ed. of* 1792. But he says in another place, even of the latter, that a release of part of the rent to the tenant of the land shall not extinguish the whole; but the rent shall be apportioned. *Id.* 163. Indeed, nothing is more reasonable than that, where both landlord and tenant participate in destroying their relation as to a part of the land, the rent should continue and be apportioned on the residue. It is the same thing, if that consequence be regarded in the case at bar as arising from the operation at law. *See per Wilde, J. in Montague* v. *Gay,* 19 *Mass. R.* 439, 440. It could not have arisen without their mutual participation.

The defendant's counsel did not characterize his evidence, on the offer he made at the trial, by saying whether he intended it as a bar, or in mitigation. Had he presented it in the former character merely, the ruling at the circuit would have been proper. But the evidence seems to have been offered generally for what it was worth; and should not have been totally excluded. The decision of the judge went to that extent, probably on the ground that, during all the time when the rent claimed was running, the legal title

to the whole was in Ferguson. It is in that alone we differ with him. The defendant's right to a deed clearly arose on the 4th of October, 1833, before either of the two quarters' rent claimed by this action fell due. The date of the deed of February 28, 1835, must be read as of the day when the deed became due. The principle of relation here is the same as if the now defendant had been the direct purchaser at a sheriff's sale before the statute. There, though the sheriff sold at one day, and did not give a deed till afterwards, the law antedated it by inserting the day of sale. *Jackson, ex dem. Noah*, v. *Dickinson*, 15 *Johns. R.* 309. *Evertson* v. *Sawyer*, 2 *Wendell*, 507. *Jackson, ex dem. De Forest*, v. *Ramsay*, 3 *Cowen*, 75, *and the cases cited in this last case by Sutherland*, J.

On the whole, we think there must be a new trial. And if the rights of the parties be not changed, the question must be referred to the jury to make a just apportionment of rent upon that part of the demised premises which lie without the sheriff's deed. *Gilb. on Rents*, 189, *Dubl. ed.* 1792 ; *and see the case of Hodgskins* v. *Robson*, 1 *Ventr.* 276, which relates both to the principle and practice of apportionment. See also *Gillespie* v. *Thomas*, 15 *Wendell*, 464, 469, *and the books cited by Mr. Justice Nelson at the latter page.*

New trial granted ; costs to abide the event.